IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYRUS R. SANDERS, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:14-CV-00288 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| DOMINICK L. DEROSE, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

The instant civil rights complaint was filed pro se by Cyrus R. Sanders, a prisoner in the custody of the Pennsylvania Department of Corrections, pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Currently pending before the court is Defendants' motion to dismiss (Doc. No. 20). For the reasons set forth below, Defendants' motion will be granted.

I. **Background**

Plaintiff alleges that, on June 13, 2012, while he was incarcerated at the Dauphin County Prison ("DCP"), his cell was searched by Officer Henson. (Doc. No. 1 at 3.) During the search, Henson took notice of two boxes of legal materials in Plaintiff's cell. (Id.) Although Henson had searched Plaintiff's cell before, and was present when one of the boxes had been delivered to Plaintiff, Henson accused Plaintiff of forging the authorization forms for the boxes. (Id.) Henson issued a misconduct report against Plaintiff for "forgery, contraband, and a litany of other offenses." (Id. at 4.) The misconduct report was served on Plaintiff by Officer Trese, who, along with Sergeant Stake, had originally brought the boxes in question to Plaintiff's cell. (Id.) When Plaintiff asked Trese for the name of the Officer that issued the report, he replied that his

last name was "White." (Id.)

Plaintiff was then ordered to pack up his property and was taken to the intake area to be processed for his misconduct. (Id.) Plaintiff was taken to a strip search area by Officer Rose, who verbally threatened him while he was naked. (Id.) Although Rose did not make physical contact with Plaintiff, he threatened Plaintiff with bodily harm and warned Plaintiff that "this is what happens to people who sue" prison guards. (Id. at 5.) Plaintiff was moved to the restricted housing unit ("RHU"), but after he complained about his mistreatment he was moved back to the general population unit and his misconduct charge "disappeared." (Id.)

Later, Plaintif sent a motion for emergency injunctive relief to this court in a separate case in order to apprise the court of what had happened. (Id.) On June 27, 2012, Plaintiff was issued another misconduct report for placing used stamps on the envelope he used to mail said motion. (Id.) Plaintiff was again sent to the RHU, and was repeatedly denied access to the commissary to purchase postage stamps. (Id. at 6.) After repeatedly filing grievances, Plaintiff was again granted access to the commissary. (Id.)

At some point before Plaintiff was placed in the RHU, inmates in the RHU had used cleaning supplies as weapons in acts of violence, leading DCP officials to suspend their ability to clean their cells. (Id.) On July 23, 2012, after Plaintiff had been placed in the RHU, the block officers initiated a new cleaning policy which allowed RHU inmates to clean the cell block. (Id.) Under this new policy, RHU inmates were able to travel outside of their cells without officers present to supervise them. (Id. at 7.)

After this policy was implemented, Plaintiff and his cellmate, Header, were attacked by another RHU inmate, Perry, with a steel broom. (Id.) During the attack, Header was knocked

2

unconscious and Plaintiff was slammed onto the concrete floor. (Id. at 8.) Plaintiff suffered "a clavicle separation, a ruptured eardrum, probably concussion, and nerve damage" as a result of the attack. Although the attack occurred within 20 feet of the officers station, and in view of surveillance cameras, no one came to their aid. (Id.) After the attack, Perry's cellmate told Plaintiff to move Header back to his cell, and Plaintiff complied. (Id.) Shortly thereafter, Officer Dietz came into the unit and discovered that Header and Plaintiff were injured, and called for back-up to secure the situation. (Id. at 9.)

On February 18, 2014, Plaintiff filed the instant civil rights complaint. (Doc. 1.) Defendants have since moved to dismiss the complaint for failure to state a claim. (Doc. 20.) The motion has now been fully briefed and is ripe for disposition. For the reasons set forth below, this court will grant Defendants' motion.

## II. Legal Standard—Motion to Dismiss

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Fair notice" in the context of Rule 8 "depends on the type of case—some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Id. A

plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); see also, Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations omitted).

A defendant may attack a complaint by a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 93 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff, Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. Iqbal, 556 U.S. at 663 (citing Twombly, 550 U.S. at 555, 570) (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); see also Phillips, 515 F.3d at 234; Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007); Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir. 2007). When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give

4

rise to an entitlement to relief." Id. at 664. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Youse v. Carlucci, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

**III.    Discussion**

Plaintiff claims that Defendants retaliated against him for filing grievances and a previous civil rights lawsuit against prison officials by issuing a false misconduct reports, threatening him, and sending him to the RHU. (Doc. 1 at 10–11.) Plaintiff also alleges that Defendants violated his rights under the Fourteenth Amendment by failing to protect him from attack by another inmate, and that Defendants are responsible for failing to train the corrections officers. (Id. at 11–13.) This court will examine whether Plaintiff has alleged sufficient factual grounds with respect to each claim separately.

   **A.    Claim 1—Retaliation**

In order to state a claim of retaliation, prisoners must allege three elements: (1) that they were engaged in constitutionally protected activity; (2) that the prisoner suffered an "adverse

5

action" at the hands of prison officials; and (3) that the constitutionally protected activity was a "substantial or motivating factor" behind the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). In order to qualify as an "adverse action" under this test, the action taken by the prison officials must be "sufficient to deter a person of ordinary firmness" from continuing to conduct the constitutionally protected activity. Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Plaintiff claims that he suffered the following acts of retaliation: 1) the issuance of a false misconduct report against him on June 13, 2012 and his subsequent placement into the RHU; and 2) Officer Rose's threatening and harassing behavior during his processing before being placed in the RHU; 3) the issuance of a misconduct report against him on June 27, 2012. (Doc. No. 1 at 6, 10–13.) Plaintiff claims that Defendants committed these acts in order to dissuade Plaintiff from filing further lawsuits and grievances against them. (Id.)

Defendants do not contest that Plaintiff's filing of a civil rights suit against DCP officials was constitutionally protected under the First and Fourteenth Amendments. See Milhouse v. Carlson, 653 F.2d 371, 373–74 (3d Cir. 1981); Burgos v. Canino, 358 F. App'x 302, 305 (3d Cir. 2009). Instead, Defendants aver that the allegations in Plaintiff's complaint, even when accepted as true, do not constitute adverse actions sufficient to state a retaliation claim. (Doc. No. 21 at 13–15.) Defendants further contend that Plaintiff has not alleged facts sufficient to show the personal involvement of all Defendants in these acts, nor that all Defendants were motivated by Plaintiff's filing of a lawsuit. (Id. at 11–13, 15–17.) This court will now examine the alleged retaliatory actions in turn.

    i.    **The June 13 Misconduct Report**

Plaintiff alleges that on June 13, 2012, Officer Henson conducted a search of Plaintiff's cell, during which he determined that Plaintiff had forged the authorization forms for two boxes of legal materials. (Doc. 1 at 3–4.) Plaintiff states that the authorization forms at DCP are computer generated and signed by the Deputy Warden in black ink, and that DCP inmates do not have access to the kinds of materials that would be necessary to make such a forgery. (Id. at 3.) Plaintiff contends that, since Henson would have known these facts, he must have made these allegations in retaliation for Plaintiff taking legal action against DCP officials. (Id. at 4.) Plaintiff further alleges that Officer Trese must have been complicit in this scheme because he later lied to Plaintiff about Henson's name. (Id.) Plaintiff claims that he was placed in the RHU for a "few days" as a result of this misconduct report. (Id. at 5.)

The filing of a false misconduct report and subsequent placement in disciplinary confinement may constitute adverse action under particular circumstances. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir 2003) ("[S]everal months in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights."); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (holding that a fact finder could conclude plaintiff had met the adverse action prong where plaintiff was placed in administrative segregation for nearly two months and where such segregation resulted in severe limitations on various privileges and on his access to courts). However, as Plaintiff himself alleges, upon complaining to the Warden about this event he was moved back to general population and the misconduct charge was withdrawn from his record within a "few days." (Doc. No. 1 at 5.) Even viewing the alleged facts in the light most favorable to Plaintiff, his placement in the RHU for a "few days" as a result of this misconduct report would not have been sufficient to deter a reasonably firm

prisoner from exercising his First Amendment rights.

Because the alleged acts surrounding this incident are plainly not sufficiently severe to constitute "adverse action," this claim will be dismissed for failure to state a claim. Furthermore, the claim will be dismissed with prejudice, as any attempt at amendment would be futile. See Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).

### ii.     Threatening Conduct by Officer Rose

Plaintiff also alleges that, shortly after the false misconduct report was issued against him, he was taken to the intake area to be processed before being placed in the RHU. (Doc. No. 1 at 4.) During the processing, Officer Rose conducted a strip search of Plaintiff and "verbally threaten[ed] and harrassed" him while he was naked. (Id.) Plaintiff states that Rose did not physically contact him while he was naked, but that he "flinch[ed]" at Plaintiff and told Plaintiff that "[t]his is what happens to people" who sue prison guards. (Id. at 5.)

Defendants aver that this conduct also does not constitute "adverse action," and this court agrees. Courts in this circuit have consistently held that verbal threats do not constitute "adverse action' for the purpose of a retaliation claim. See Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) ("[T]he verbal threats and few gestures of racial harassment [Plaintiff] allegedly encountered are not sufficiently adverse to support a retaliation claim."); Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation."). While the fact that Plaintiff was naked while being threatened surely made the threats more egregious, even threats of a highly humiliating and intimidating nature are insufficient to constitute "adverse action." See Dunbar, 487 F. App'x at 723 (holding that verbal threats against an african american prisoner accompanied by white pillowcase hoods and Nazi salutes were

8

insufficient to constitute adverse action).

Because the alleged acts surrounding this incident plainly cannot constitute an "adverse action," this claim will be dismissed for failure to state a claim. Furthermore, the claim will be dismissed with prejudice, as any attempt at amendment would be futile. See Phillips, 515 F.3d at 236.

### iii. The June 27, 2012 Misconduct Report

Plaintiff alleges that, on June 27, 2012, he was issued a misconduct report for "placing used stamps on an envelope for postage" to send a motion to the DCP's counsel regarding a separate lawsuit. (Doc. No. 1 at 5.) Plaintiff was sent to the RHU as punishment for this misconduct. (Id.) Plaintiff does not claim that this misconduct report was falsely issued, but states that "no other inmate was eve[r] sent to the RHU for placing a used stamp on an envelope to mail legal materials," and infers from this that the "misconduct was issued for retaliatory reasons." (Id. at 6.) Plaintiff appears to have been confined to the RHU until at least July 23, 2012, when the attack against him occurred. (Id. at 7.)

Unlike in the case of his June 13, 2012 misconduct report, Plaintiff does not allege any suspicious actions or statements on the part of prison officials that would imply retaliatory motives. Rather, Plaintiff merely makes a conclusory assertion that the punishment must have been motivated by a desire to retaliate because it was uncommon. (Id. at 6.) However, this is plainly insufficient to show that the punishment was retaliatory. Something more, such as an "unusually suggestive temporal proximity between the protected activity and the alleged retaliatory conduct" or a pattern of antagonistic behavior surrounding the punishment, would be necessary to show the causal link. Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 1997).

9

Furthermore, Plaintiff has not alleged the personal involvement of any named defendant in the issuing of this misconduct report. Plaintiffs may not rely on theories of vicarious liability to hold defendants responsible in a civil rights suit, but instead "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but these allegations "must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, even if this court were to allow that Plaintiff's pleadings demonstrated a retaliatory motive behind this misconduct report, Plaintiff would nonetheless fail to state a claim.

Because the actions Plaintiff cites to as being retaliatory are, even when accepted as true and construed in Plaintiff's favor, either insufficiently severe to constitute "adverse action" under the Rauser test, or contain no evidence of a retaliatory motive, this court must conclude that Plaintiff has failed to state a claim of retaliation against any Defendants.

**B.     Claim 2—Failure to Protect**

Plaintiff next alleges that Defendants violated his Fourteenth Amendment right to be free of cruel and unusual punishment by failing to protect him from assault by another inmate during his second confinement in the RHU. (Doc. No. 1 at 11–13.)[1] While the "Constitution 'does not mandate comfortable prisons' . . . neither does it permit inhumane ones," and prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must

---

[1] As Plaintiff was a pre-trial detainee at the time of the alleged events, his claim of cruel and unusual punishment falls within the Fourteenth Amendment, rather than the Eighth Amendment. See Graham v. Connor, 490 U.S. 386, 392 n.6 (1989); Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). In the context of a failure-to-protect claim, however, the same standard is applied for both pre-trial detainees and convicted prisoners. See Paulino v. Burlington Co. Jail, 438 F. App'x 106, 109 (3d Cir. 2011).

'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981); Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). A prisoner bringing a failure-to-protect claim under this standard must allege facts showing that prison officials acted with "deliberate indifference" to an excessive risk to inmate safety. Id. at 834. This requires that a plaintiff satisfy both an objective and subjective test. Allah v. Bartkowski, 574 F. App'x 135, 138 (3d Cir. 2014).

To satisfy the objective the test, a plaintiff must show that the conditions of his confinement imposed a "substantial risk of serious harm." Farmer, 511 U.S. at 834. To satisfy the subjective component of the test, the plaintiff must show that the prison official both knew of and disregarded those conditions. Farmer, 511 U.S. at 837. Defendants primarily contend that Plaintiff has not alleged facts sufficient to meet the subjective component of this test.

With respect to his failure-to-protect claim, Plaintiff alleges that DCP officials had, at some unspecified time, suspended the ability for RHU inmates to clean their cell block due to previous incidents where inmates had used cleaning supplies as weapons. (Doc. No. 1 at 6.) On July 23, 2012, after Plaintiff had been confined in the RHU for attempting to send legal mail with a used stamp, the officers in charge of the RHU instituted a new cleaning policy. (Id.) This new policy "created a situation where inmates from different cells were free on the unit without officers present to supervise inmates wh[o] are normally handcuffed when outside of their cells together." [Id. at 7.] Some time after this new policy was initiated, Plaintiff claims that another inmate, Perry, assaulted both him and his cellmate, Matthew Header. Header was attacked with a "ste[e]l broom" and Plaintiff was "slammed on his neck and shoulders to the concrete floor." (Id. at 8.)

11

Defendants aver that Plaintiff has not alleged sufficient facts to show that any defendant actually knew that he was subject to any substantial risk of serious harm, and furthermore that Plaintiff has not even alleged the personal involvement of any individual defendant. (Doc. No. 21 at 19–21.) Plaintiffs may not rely on theories of vicarious liability to hold defendants responsible in a civil rights suit, but instead "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but these allegations "must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

This court agrees that Plaintiff has not alleged facts sufficient to show the personal involvement of any individual defendant in the decision to allow RHU inmates to clean outside of their cells unsupervised. Plaintiff does not allege that any defendant was directly responsible for implementing security policies in the RHU, nor that any defendant was aware of the ongoing attack, nor even that any defendant was aware that Perry posed a substantial threat to Plaintiff. (See Doc. No. 1 at 2–3, 6–10.) Instead, Plaintiff alleges only that anonymous "block officers" decided to initiate a new cleaning policy in the RHU that was "presumably unapproved by the administration." (Id. at 6.) Plaintiff also claims that the attack occurred within view of the video cameras, but does not allege that any defendants were monitoring the video cameras at the time.[2] (Id. at 8.) Even if this court were to accept that an officer may be held liable for failing to adequately monitor the camera during this time, Plaintiff does not allege that any defendant was

---

[2] In fact, Plaintiff goes so far as to state that he believes no one was actively monitoring the video cameras at all, but that several unnamed officers were lounging on milk crates in the control room in such as a way as to have "no view of the unit or the video monitors." (Doc. No. 1 at 9.)

in charge of monitoring the cameras during that time.

The only defendant who Plaintiff alleges had any personal involvement in this sequence of events is Officer Dietz, who came into the RHU "some minutes later" while making his rounds to discover Plaintiff and his cellmate had been injured. (Id.) Plaintiff implies that Dietz was somehow negligent in his duties in this regard, but alleges no facts to show that Dietz actually knew that Plaintiff was exposed to substantial risk of serious harm prior to discovering that Plaintiff was injured. Because Plaintiff has failed to allege sufficient facts to show that Dietz knew of and disregarded a substantial risk of serious harm against Plaintiff, he has failed to state a failure-to-protect claim against Dietz. Similarly, because Plaintiff has failed to allege facts showing the personal involvement of any other defendant, he has failed to state a failure-to-protect claim against all other defendants.

      C.      **Claim 3—Failure to Train**

Finally, Plaintiff appears to claim that Defendants are liable for failing to adequately train the DCP officers, leading to the inadequate response to the attack that was made against Plaintiff. (Doc. No. 1 at 12.) A municipality[3] may be liable under § 1983 for failing to train its employees "where the failure to train demonstrates a 'deliberate' or 'conscious' choice by the municipality." Doe v. Luzerne County, 660 F.3d 169, 179 (3d Cir. 2011) (quoting Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005)). In order to meet this requirement, a plaintiff must show that: 1) the "municipal policymakers know that employees will confront a particular situation"; 2) the situation involves a "difficult choice" or there is a history of

---

[3] The court notes that Plaintiff does not list Dauphin County as a defendant in the complaint, nor does he state that he is suing any defendant in his official capacity. Nonetheless, the court will analyze this claim under the assumption that Plaintiff intended to sue Defendants in their individual and official capacities.

employees mishandling the situation; and 3) "the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. at 179–80 (quoting Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). Furthermore, a plaintiff must identify a deficiency in the training program that is "closely related to the ultimate injury," meaning that the deficiency in training "actually caused" the constitutional violation. Id.

While it may be assumed that municipal policymakers are aware that prison employees will face the situation of violence between inmates, Plaintiff has failed to allege facts sufficient to satisfy the other components of this test. First, Plaintiff has not actually identified any particular training that would have avoided this issue, nor alleged that such a program was not given to the employees in question. (See Doc. No. 1 at 12.) Assuming that the training in question regarded actively monitoring a cell block during times when inmates were allowed to leave their cells, Plaintiff has not explained how such a situation presents a "difficult choice," nor alleged that there is a history of employees mishandling these situations.

Because Plaintiff has failed to adequately plead the components of a failure-to-train claim, this claim must be dismissed.

## IV.    Conclusion

For the reasons given above, Defendants' motion to dismiss will be granted with respect to all of Plaintiff's claims. As explained above, Plaintiff's claims of retaliation regarding his June 13, 2012, misconduct report and the verbal threats given by Officer Rose will be dismissed with prejudice, as any attempt to amend those claims would be futile.[4] Plaintiff's other claims

---

[4] Although these claims will be dismissed with prejudice, this court notes that Plaintiff may still incorporate the factual allegations into an amended complaint for some other purpose, such as to demonstrate a defendant's motivation.

14

will be dismissed without prejudice, and Plaintiff will be given 30 days to amend his complaint to attempt to restate those claims. Plaintiff is advised that any proposed "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).

      An appropriate order will issue.